# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **DR. JEFFREY MORGAN,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| | § | |
| **v.** | § | **21-1139** |
| | § | |
| | § | **JURY TRIAL DEMAND** |
| **Xavier Becerra, Secretary,** | § | |
| **Department of Health and Human** | § | |
| **Services, Indian Health Service,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Dr. Jeffrey Morgan ("Morgan") and files this, his Original Complaint and Jury Demand against Defendant Xavier Becerra, Secretary, Department of Health and Human Services, Indian Health Service ("IHS" or "Defendant") concerning race/color discrimination arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and 29 U.S.C. Chapter 14; E.O. 12106. In support of Plaintiff's claims, he respectfully states as follows:

### I.    JURISDICTION AND VENUE

1. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 1981, and 42 U.S.C. § 2000e-5(f)(3).

2. Venue is proper in this district under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5.

### II.    PARTIES

3.  Plaintiff is an African-American citizen of the United States.

4.  Defendant is a governmental agency, with the hospital in question Gallup Indian Medical Center (GIMC), which is in Gallup, New Mexico, on the border of the Navajo Reservation.

### III.    FACTS

**A.  INTRODUCTION**

5.  Plaintiff Dr. Jeffrey Morgan is asserting that the Agency failed to hire him because of his race, using the pretextual reason that he did not meet the minimum qualifications for the position of Medical Officer (Orthopedic Surgery), GP-0602-15. Specifically, the Agency is contending that Dr. Morgan was required to have completed 5-years of residency training while ignoring that "MINIMUM QUALIFICATIONS: … Specialist positions: For GS-15 – 5 years of residency training in the specialty of the position to be filled **or equivalent experience and training."** (emphasis added). Dr. Morgan is an extremely accomplished Orthopedic Surgeon, despite the Agency's assertions that he failed to even meet the minimum qualifications of the position.

**B.  DR. MORGAN'S MEDICAL TRAINING AND CAREER**

6.  Dr. Jeffrey Morgan, MD, US ORS, successfully earned his Doctor of Medicine from the University of South Carolina in 1998.

7.  From July 1998—June 1999, Dr. Morgan was completing a one-year internship in the department of surgery from The Tulane University of Louisiana's post-graduate medical studies program.

8.  Dr. Morgan's research in the Orthopedic field has been published on multiple occasions.

9.  By February 28, 2003, Dr. Morgan was earning a certification from Tulane University, completing 56 months of his residency in the Department of Orthopedic Surgery and was ending his training in good standing.

10. Dr. Morgan left Tulane University 4-months shy of completing **their** residency program, as he was accepted into an equivalent program through the University of Oregon.

11. In April and May of 2003, Dr. Morgan spent eight weeks as an orthopedic preceptee at Orthopedic Healthcare Northwest – Physicians and Surgeons. During that time he participated in all aspects of care of orthopedic patients, including evaluation, preoperative planning, surgery and postoperative surgical care and rehabilitation. He spent additional time in their capacity as team physician and orthopedic consultants for the Department of Intercollegiate Athletics at the University of Oregon.

12. Based on his additional training, the American Medical Association (AMA), "verified" that his specialty in Orthopedic Surgery ("residency") at Tulane University was a completed "Post Graduate Medical Training Program[] Accredited by the Accreditation Council for Graduate Medical Education (ACGME)."

13. In October 2006, Dr. Morgan was able to parlay his sterling academic career into being appointed to the Medical Staff at the prestigious Colombia Surgery Center, with active privileges to perform surgery in his specialty of Orthopedics.

14. Dr. Morgan has additionally held Orthopedic surgical privileges at notable hospitals, including but not limited to, Beth Israel Surgical Center in Florida.

15. In addition to various surgical privileges across the nation, Dr. Morgan has been elected as a Fellow of the International College of Surgeons in Orthopedic Surgery, and been named to the International Board of Medicine and Surgery – demonstrating "the establishment and

maintenance of standards or professional performance and conduct and the documentation of **credentials** and competency" (emphasis added).

16. Dr. Morgan is an active member of the South Carolina Chapter of the American College of Surgeons.

C. **DR. MORGAN APPLIES TO GALLOP INDIAN MEDICAL CENTER ("GIMC")**

17. Dr. Morgan applied for the position of Medical Officer (Orthopedic Surgery), GP-0602-15 in December 2016, after communicating with Helen Laughing-Hoskie, Health Recruitment Specialist, GS-12, GIMC. Mrs. Laughing reported to Dr. Loretta Christensen, Chief Medical Officer, GIMC and in charge of hiring for the position.

18. At the time Dr. Morgan applied for the Orthopedic Surgery position at GIMC, he was highly decorated and coming with thirty (30) combined years of formal education, training, and surgical practice experience.

19. On September 29, 2017, Dr. Christensen emails Dr. Morgan, informing him that she has been detailed to another position, and that Dr. Kevin Gaines will be the new Acting CMO for GIMC. Despite the hiring process typically taking 3-6 months, it wasn't until Dr. Christensen left her position that Dr. Morgan was awarded an on-site visit in December 2017.

20. During the onsite visit, Dr. Morgan was under the impression that he would be meeting with Dr. Christiansen, but the interaction was limited to a "very brief" and "caustic" passing in the hallway. They shook hands, "but hers was very quick, almost like don't really touch me kind of deal… and then next sort of looked at me a lot but then looked away as though she didn't really want to make eye contact with me… She made it really short … I am certain I was expected to feel dismissed by that interaction with her"

21. Conversing with Dr. Morgan after the shocking incident, Dr. Gaines acknowledged that "[Dr. Morgan] was being treated differently than other applicants."

22. Despite this interaction, on or about March 5, 2018, Dr. Gaines signed off on provisional authorization for Dr. Morgan to be hired at GIMC.

23. The job was officially offered and accepted by Dr. Morgan on March 13, 2018.

24. On March 15, 2018, the job offer was unceremoniously taken away from Dr. Morgan.

25. Despite no longer being in her position as CMO at GIMC, Dr. Christiansen instructed Dr. Gaines that "it is **mandatory** that he provide a residency certificate from a ACGME certified residency program." (emphasis added).

26. Nevertheless, despite Dr. Christiansen's assertions of "mandatory" requirements on March 15, 2018, she has since asserted that "We can ignore the requirements of a position." Dr. Gaines also confirmed this flexibility.

27. Plaintiff timely filed an EEOC charge of discrimination (EEOC No. 540-2019-00140X; Agency No. HHS-HIS-0338-2018) which was adjudicated by Administrative Judge Jacob Smiles on August 26, 2021.

28. In accordance with 29 Code of Federal Regulations (C.F.R.) § 1614.110(a), the Agency issued a Final Order on September 1, 2021. This suit is being filed within 90 days of Plaintiff receiving the Final Order.

## VI.  JURY DEMAND

29. Plaintiff hereby demands a trial by jury on all claims and defenses in this action.

## V.  CAUSES OF ACTION

**A.      Color and Race Discrimination**

30. Plaintiff realleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

31. As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's race and color in violation of 42 U.S.C. §2000e-2(a), 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001, *et seq*.  The employment practices complained of above were intentional.

32. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claims under Title VII, section 1981, and the Texas Labor Code.

33. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment.

34. As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

35. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federal- and state-protected rights.  Plaintiff therefore seeks punitive damages under 42 U.S.C. §§ 1981 and the Texas Labor Code.

36. Additionally, Plaintiff seeks any and all equitable relief necessary to return him to the position that he would have been in but for Defendant's unlawful discrimination.

37. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue his state and federal rights in this action.  Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-5(k), and the Texas Labor Code.

## VII.  PRAYER

WHEREFORE, Plaintiff, respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, Plaintiff be awarded:

a.    Judgment against Defendant ordering Defendant to take such other reasonable actions as may be necessary to remedy the effects of Defendant's violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000(e), and the Texas Labor Code;

b.    Judgment against Defendant for lost wages and benefits, both back pay and front pay;

c.    In the alternative to front pay, judgment against Defendant reinstating Plaintiff to his position of employment, equivalent position of employment, or the position of employment he would have enjoyed but for the discrimination, if reinstatement is deemed feasible;

d.    Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

e.    Judgment against Defendant for punitive damages to the extent allowed under the law;

f.    Pre-judgment interest at the appropriate legal rate on all amounts awarded;

g.    Interest after judgment at the appropriate legal rate on all amounts awarded until paid in full;

h.    Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees;

i.    Costs of suit; and

j.    Such other and further relief to which Plaintiff may justly be entitled.

Date: November 30, 2021

Respectfully submitted,

/s/ *Adam S. Greenfield*
Adam S. Greenfield
Texas Bar No. 24075494
agreenfield@candglegal.com
*Board Certified in Labor & Employment Law*
*by the Texas Board of Legal Specialization*
**Cloutman & Greenfield, PLLC**
3301 Elm Street
Dallas, Texas 75226
214.642.7486

*/s/ Philip B. Davis*
Philip B. Davis
DAVIS LAW NEW MEXICO
1000 Lomas N.W.
Albuquerque, N.M. 87102
505.242.1904
phil@davislawnm.com

**COUNSEL FOR PLAINTIFF**