### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

DR. JEFFREY MORGAN

      Plaintiff,

v.                                                                  No. 1:21-cv-01139-JHR-GBW

XAVIER BECERRA, Secretary,
Department of Health and Human
Services, Indian Health Service,

      Defendant.

### ORDER FOR PRODUCTION OF EVIDENCE AND A HEARING ON PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

**THIS MATTER** is before the Court on Plaintiff Jeffrey Morgan's Motion to Appoint Counsel, [Doc. 38] ("the Motion"). Defendant Xavier Becerra responded and does not oppose the Motion. [Doc. 40, p. 1].

### I.    BACKGROUND AND PROCEDURAL HISTORY

This lawsuit began in late 2021 when Plaintiff Jeffrey Morgan, M.D., sued Defendant Xavier Becerra, Secretary of the United States Department of Health and Human Services, alleging that employees of the Department's Indian Health Service refused to hire him because of his race and thus violated 42 U.S.C. § 2000e-2(a).[1] *See* [Doc. 1]. At the time, Dr. Morgan was represented by Adam S. Greenfield of Cloutman & Greenfield, PLLC, a law firm in Texas, and by local attorneys from Davis Law New Mexico. *See id.* at 8. Greenfield and the Davis firm represented Dr. Morgan until June 2023 when the attorneys moved to withdraw from this case "[d]ue to irreconcilable differences" between counsel and Dr. Morgan. [Doc. 34, p. 1]. The

---

[1] Dr. Morgan's other causes of action were dismissed without prejudice and not realleged in his amended complaint. *See* [Docs. 27, 31].

1

Court granted the motion and gave Dr. Morgan until July 17 to retain another lawyer or be deemed *pro se*. [Doc. 35, p. 1].

Dr. Morgan now represents himself and moves for the Court to appoint him a lawyer. *See* [Doc. 38]. In his Motion, he states that his past counsel engaged in "unethical conduct concluding in withdrawal" and that "he is incapable of protecting himself from further injustice leading up to trial" without representation. [Doc. 38, p. 1]. Dr. Morgan also includes a non-exhaustive list of eighteen law practices which he says he contacted seeking representation and copies of emails from eleven of them declining to take his case. *Id.* at 2–14. Becerra acknowledges the Motion, notes only that Dr. Morgan did not seek concurrence before filing it as required by local rules, and takes no position on whether it should be granted. [Doc. 40, p. 1] (citing D.N.M.LR-Civ. 7.1(a)).

## II. RELEVANT LAW

In federal civil cases for unlawful discrimination in employment, "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e-5(f)(1). To be appointed counsel, the plaintiff must make affirmative showings on four factors: (1) his inability to afford a lawyer; (2) his diligence in finding a lawyer; (3) the merits of his case; and, in close cases, (4) his incapacity to prepare and present his case without the aid of counsel. *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992). Not every factor needs to be satisfied for the Court to appoint counsel, so no single factor is dispositive, and whether to appoint a lawyer is within the discretion of the Court. *Id.* at 1420. The factors are designed to accommodate two competing considerations. On the one hand, there is Congress's special concern that civil rights

plaintiffs have access to legal representation, recognizing both the importance of private enforcement of civil rights laws and the reality that anti-discrimination lawsuits "more often than not pit[] parties of unequal strength and resources against each other." *Id.* at 1421 (quoting H.R. Rep. No. 92-238 (1972), reprinted in 1972 U.S.C.C.A.N. 2137, 2148). On the other, there are the needs of the local civil rights bar, as § 2000e-5 has no mechanism for compensating appointed counsel. *Castner*, 979 F.2d at 1421.

The Tenth Circuit has elaborated on how each factor should be weighed. First, a litigant's ability to pay should be evaluated based on whether she can hire counsel and still meet her daily expenses; she need not be destitute to qualify. *Id.* at 1421–22. Second, whether the plaintiff was diligent in finding a lawyer is based on what is reasonable under the circumstances. *Id.* at 1422. This includes considering the availability of counsel in the relevant region who take employment discrimination claims, the plaintiff's skill at obtaining legal help, and how many attorneys she contacted (though she is "not required to 'exhaust the legal directory'"). *Id.* (quoting *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977)). Third, administrative findings about the plaintiff's case should be considered, but the court "must make an independent determination of whether [her] claim has merit" rather than relying wholly on those findings. *Castner*, 979 F.2d at 1422. This makes sense since employment discrimination plaintiffs must exhaust their administrative remedies before they can sue, so many employment discrimination lawsuits will arise after the Equal Employment Opportunity Commission decides that the case is meritless. *See* 42 U.S.C. § 2000e-5(f) (requiring exhaustion of administrative remedies before plaintiffs can sue). A finding that there is probable cause to believe unlawful discrimination occurred should thus establish a presumption in the plaintiff's favor on this factor, but an opposite finding on its own should not preclude appointment. *Castner*, 979 F.2d at 1422.

Finally, whether a plaintiff can present her case without counsel depends on both the objective complexity of the issues and her individual, subjective ability to gather and present crucial facts. *Id.* Plaintiffs with little education and a poor grasp of English are generally ill-suited to self-representation while former law professors handling their case post-discovery are usually capable. *See id.* (comparing *Luna v. Int'l Ass'n of Machinists & Aerospace Workers Loc. No. 36*, 614 F.2d 529, 531 (5th Cir. 1980) and *Hudak v. Curators of Univ. of Mo.*, 586 F.2d 105, 106 (8th Cir. 1978)).

Additionally, it should be acknowledged that the District of New Mexico's local rules permit the Court to summarily deny Dr. Morgan's Motion because he did not seek Becerra's concurrence. D.N.M.LR-Civ. 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied"). In the interest of justice, the Court declines to deny the Motion on that ground.

### III.     DISCUSSION

The Court does not have enough information to fairly decide Dr. Morgan's Motion. The only factor for which the Court has clear information is whether Dr. Morgan has been diligent in seeking counsel. *See* [Doc. 38]. There is little on the record regarding Dr. Morgan's ability to afford an attorney, whether his case can be proven and won on its merits, nor what skills he possesses or lacks for gathering evidence and presenting his case. The Court must consider these facts before it decides whether to appoint counsel, and it is Dr. Morgan's burden to provide them. *See Castner*, 979. F.2d at 1421. Dr. Morgan is thus ordered to produce specific information, detailed below, which will guide the Court's analysis of the *Castner* factors. He is also ordered to appear for a hearing on his Motion. After the Court has the appropriate information, his Motion will be decided.

### IV. CONCLUSION

The following is ordered:

**(A) Production of Evidence:** On or before November 17, 2023, Dr. Morgan shall file an affidavit with the Court stating his annual income, a summary of his assets (including stocks, bonds, and savings), and his typical monthly expenses (including rent, mortgage payments, utility bills, and spending on other necessaries). Dr. Morgan may attach to the affidavit, as exhibits, documents such as monthly bank statements and earning statements to verify his representations in the affidavit; he should redact any account numbers or personal identifiers other than his name, as well as any information that is not relevant to his current and prospective financial condition. **THE AFFIDAVIT AND SUPPORTING EXHIBITS SHALL BE FILED UNDER SEAL, AVAILABLE TO CASE PARTICIPANTS ONLY, TO PROTECT SENSITIVE FINANCIAL AND PERSONAL INFORMATION. DR. MORGAN SHALL INFORM THE CLERK'S OFFICE THAT THE FILING IS UNDER SEAL, REFERRING TO THIS ORDER FOR AUTHORITY.**

**(B) Hearing:** On a date convenient to the parties, the Court shall hold a hearing on Dr. Morgan's Motion to Appoint Counsel over Zoom. During the hearing, Dr. Morgan will have the opportunity to address whether he can afford to hire a lawyer, the merits of his case, how well he can gather information and present his case, and any other matters relevant to appointment of counsel.

**IT IS SO ORDERED.**

                                                                                       _____
                                                                                       Hon. Jerry H. Ritter
                                                                                       United States Magistrate Judge