IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DR. JEFFREY MORGAN,

      Plaintiff,

v.                                                                                                       No. 1:21-cv-01139-JHR-GBW

XAVIER BECERRA, Secretary,
Department of Health and Human
Services, Indian Health Service,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL**

THIS MATTER is before the Court on Plaintiff Jeffrey Morgan's Motion to Appointment (*sic*) Counsel, [Doc. 38] ("the Motion"). Defendant Xavier Becerra responded and does not oppose the Motion. [Doc. 40, p. 1]. Having considered parties' filings, documents submitted by Dr. Morgan alongside the record as a whole, and the relevant law, the Court denies the Motion. Pursuant to the Court's Order Setting Deadline for Motion for Leave to Amend, [Doc. 56], Dr. Morgan may move for leave to file a second amended complaint on or before **January 23, 2024.**

## I.   BACKGROUND AND PROCEDURAL HISTORY

This lawsuit began in late 2021 when Plaintiff Jeffrey Morgan, M.D., sued Defendant Xavier Becerra, Secretary of the United States Department of Health and Human Services, in his official capacity. *See* [Doc. 1, p. 1]. Dr. Morgan alleged that employees of the Department's Indian Health Service refused to hire him as an orthopedic surgeon at the Gallup Indian Medical Center because of his race and thus violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).[1] *See id.* At the time, Dr. Morgan was represented by Adam S. Greenfield of

---

[1] Dr. Morgan's other causes of action were dismissed without prejudice and not realleged in his first amended complaint. *See* [Docs. 27, 31]. Dr. Morgan has also stated he believes he was discriminated against because of his

1

Cloutman & Greenfield, PLLC, a law firm in Texas, and by local attorneys from Davis Law New Mexico. *See id.* at 8. Greenfield and the Davis firm represented Dr. Morgan until June 2023 when the attorneys moved to withdraw from this case "[d]ue to irreconcilable differences" between counsel and Dr. Morgan. [Doc. 34, p. 1]. The Court granted the motion and, since July 17, 2023, Dr. Morgan has been deemed *pro se*. [Doc. 35, p. 1]. In that capacity, Dr. Morgan has participated in discovery, including contributing to the Rule 16 joint status report, [Doc. 39], drafting initial disclosures, [Doc. 44], and attending a Rule 16 scheduling conference in August, *see* [Docs. 45, 46]. Dr. Morgan also filed a proposed second amended complaint and replied to Becerra's response in opposition to it. *See* [Docs. 42, 49].

Dr. Morgan now moves for the Court to appoint a lawyer to represent him. *See* [Doc. 38]. In his Motion, he states that his past counsel engaged in "unethical conduct concluding in withdrawal" and that "he is incapable of protecting himself from further injustice leading up to trial" without representation. *Id.* at 1. Dr. Morgan incorporates a non-exhaustive list of eighteen law practices which he contacted seeking representation and copies of emails from eleven of them declining to take his case. *Id.* at 2–14. Becerra acknowledges the Motion, notes only that Dr. Morgan did not seek concurrence before filing it as required by local rules, and takes no position on whether it should be granted. [Doc. 40, p. 1] (citing D.N.M.LR-Civ. 7.1(a)). The Court ordered Dr. Morgan to produce an affidavit describing his financial situation and to appear for a hearing on his Motion, which was held on November 30, 2023. *See Morgan v. Becerra*, 2023 WL 7222826 at *2 (D.N.M. Nov. 2, 2023), [Doc. 50, p. 5]; [Doc. 54]. During that hearing, the Court further ordered Dr. Morgan produce documents from his proceedings

---

sex. *See* [Doc. 42, p. 19]. The sex discrimination claim is not currently before the Court because, at time of writing, the operative complaint does not state this claim. *See* [Doc. 31].

before the Equal Employment Opportunity Commission (EEOC).  [Docs. 54, 55].[2]  The matter is now ripe for decision.

## II.  RELEVANT LAW

In federal civil cases for unlawful discrimination in employment, "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."  42 U.S.C. § 2000e-5(f)(1).  To be appointed counsel, the plaintiff must make showings on four factors:  (1) his inability to afford a lawyer; (2) his diligence in finding a lawyer; (3) the merits of his case; and, in close cases, (4) his capacity to prepare and present his case without the aid of counsel.  *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992).  Not every factor needs to be satisfied for the Court to appoint counsel, so no single factor is necessarily dispositive, and whether to appoint a lawyer is within the discretion of the Court.  *Id.* at 1420.  The factors are designed to accommodate two competing considerations.  On the one hand, there is Congress's special concern that civil rights plaintiffs have access to legal representation, recognizing both the importance of private enforcement of civil rights laws and the reality that anti-discrimination lawsuits "more often than not pit[] parties of unequal strength and resources against each other."  *Id.* at 1421 (quoting H.R. Rep. No. 92-238 (1972), reprinted in 1972 U.S.C.C.A.N. 2137, 2148).  On the other, there are the needs of the local civil rights bar, as § 2000e-5 has no mechanism for compensating appointed counsel.  *Castner*, 979 F.2d at 1421.

---

[2] Documents 55 and 56 are electronic, text-only entries viewable on the federal judiciary's Case Management/Electronic Case Files (CM/ECF) system for the District of New Mexico.  Individuals who cannot access the CM/ECF system can view public case files and docket information on https://pacer.uscourts.gov.

The Tenth Circuit has described how each factor should be weighed. First, a litigant's ability to pay should be evaluated on whether he can hire counsel and still meet his daily expenses; he need not be destitute to qualify. *Id.* at 1421–22. Second, whether the plaintiff was diligent in finding a lawyer is based on what is reasonable under the circumstances, including the availability of counsel in the region who take employment discrimination claims, the plaintiff's skill at obtaining legal help, and how many attorneys he contacted (though he is "not required to 'exhaust the legal directory'"). *Id.* at 1422 (quoting *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977)).

Third, administrative findings about the plaintiff's case should be considered, but the court "must make an independent determination of whether a claim has merit" rather than relying wholly on those findings. *Castner*, 979 F.2d at 1422. This makes sense because employment discrimination plaintiffs must exhaust their administrative remedies before they can sue, so many employment discrimination lawsuits will arise only after the EEOC decides that the case does not warrant government action. *See* 42 U.S.C. § 2000e-5(f) (requiring exhaustion of administrative remedies before plaintiffs can sue). A finding that there is probable cause to believe unlawful discrimination occurred should thus establish a presumption in the plaintiff's favor on this factor, but an opposite finding on its own should not preclude appointment. *Castner*, 979 F.2d at 1422. The merits analysis should be holistic – "unless the complaint is legally insufficient for failure to state a claim, a court ordinarily should review the investigative file and allow the *pro se* plaintiff an opportunity to rebut the EEOC's conclusions." *Id.* (citing *Jones v. WFYR Radio/RKO Gen.*, 626 F.2d 576, 577 (7th Cir. 1980)). The Tenth Circuit has also said that a § 2000e-5 plaintiff "need only demonstrate his claim 'has some merit'"; the standard for merit in this context is "lower than the standard in motions for summary judgment." *Vera v. Utah Dep't of Hum. Servs.*,

4

*Youth Corr. Div.*, 203 F.3d 836 (Table), 2000 WL 130717 at *3 (10th Cir. 2000) (quoting *Bradshaw v. Zoological Soc'y*, 662 F.2d 1301, 1308 (9th Cir. 1981)).

Finally, whether a plaintiff can present his case without counsel depends on both the objective complexity of the issues and his individual, subjective ability to gather and present crucial facts. *Castner*, 979 F.2d at 1422. Plaintiffs with little education and a poor grasp of English are generally ill-suited to self-representation while former law professors handling their case post-discovery are usually capable. *See id.* (comparing *Luna v. Int'l Ass'n of Machinists & Aerospace Workers Loc. No. 36*, 614 F.2d 529, 531 (5th Cir. 1980) and *Hudak v. Curators of Univ. of Mo.*, 586 F.2d 105, 106 (8th Cir. 1978)).

The District of New Mexico's local rules permit the Court to summarily deny Dr. Morgan's Motion because he did not seek Becerra's concurrence. D.N.M.LR-Civ. 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied"). The rule is discretionary, so the Court will exercise discretion. Rather than deny the Motion for purely technical reasons, the Court considers whether appointment of counsel is warranted based on the *Castner* factors.

## III.    DISCUSSION

Applied to Dr. Morgan's case, the *Castner* factors are mixed, but overall disfavor appointment of counsel. The Court thus declines to appoint a lawyer to represent Dr. Morgan.

### a.    *Ability to Pay and Diligence*

Dr. Morgan's affidavit and testimony show he cannot reasonably pay an attorney and still cover his daily expenses. Although he is an orthopedic surgeon by trade, his stated income for the last two years is far below the median income of nonfamily households[3] in his home state

---

[3] "A nonfamily household consists of a householder living alone (a one-person household) or where the householder shares the home exclusively with people to whom he/she is not related." United States Census Bureau, *Subject*

regardless of occupation.  *Compare* [Doc. 52, p. 5] (stating Dr. Morgan's annual income for the last two years); United States Census Bureau, *2021 and 2022 American Community Survey 1-Year Estimates*, Median Nonfamily Household Income in the Past 12 Months, Table ID B19202 (finding median annual nonfamily household income in South Carolina to be $35,847 in 2021 and $38,426 in 2022).[4]  Dr. Morgan did not outline the details of his daily expenses, but it is implausible that anyone of his reported income would be able to afford basic living expenses while paying the hefty costs of hours billed by a typical lawyer.  The first *Castner* factor thus weighs in favor of appointment.

Dr. Morgan has also shown diligence in attempting to find counsel.  The minimum number of lawyers one must contact to show "diligence" varies from case to case.  Here, contacting eighteen law practices, eleven of which rejected the case in writing, seems sufficient to show that Dr. Morgan is resorting to appointment only after diligently trying to hire an attorney privately.  *See* [Doc. 38, pp. 2–14].  The second *Castner* factor thus also weighs in Dr. Morgan's favor.

  b.  *Merits of the Case*

Dr. Morgan's case, however, is seriously flawed on its merits.  For reasons discussed below, it seems highly unlikely that Dr. Morgan can prevail when faced with even a favorable reading of the evidence, so this factor disfavors appointment.

Dr. Morgan's case relies on indirect evidence of discrimination, so he will need to prove his case under the *McDonnell Douglas* burden-shifting framework for unlawful employment discrimination claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

---

*Definitions*, Census.gov, https://perma.cc/DF3V-U24J (originally https://www.census.gov/programs-surveys/cps/technical-documentation/subject-definitions.html#householdnonfamily) (revised November 3, 2023; accessed January 2, 2024).
[4] Data from the American Community Survey can be accessed at https://data.census.gov.

Such a plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applications from similarly qualified candidates.  *See id.* at 802.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the rejection.  *Id.*  One such legitimate reason would be that the defendant believed plaintiff was not qualified for the position to which he applied.  *See, e.g., Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1217 (10th Cir. 2013) (recognizing the employer's belief that plaintiff's "knowledge of tools and time management skills were insufficient" to be a "legitimate nondiscriminatory reason" not to promote plaintiff).  Then, if the employer meets its burden to make a rebuttal case, the burden shifts back to the plaintiff to show that the employer's stated reason for rejecting him was a pretext for unlawful discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 804.

      Whether a job applicant was qualified for the position to which he applied is a crucial part of the *McDonnell Douglas* analysis.  The second element of the prima facie case requires the plaintiff to show that he satisfied all objective, reasonable, and consistently applied criteria required by the employer.  *York v. Amer. Tel. & Tel. Co.*, 95 F.3d 948, 954 (10th Cir. 1996).  Employers are generally given broad discretion to set such requirements.  *Id.* (citing *Hickman v. Flood & Peterson Ins., Inc.*, 766 F.2d 422, 425 (10th Cir. 1985)).  This does not include subjective job criteria, such as the ability to get along with others, nor any "objective, employer-imposed qualifications that have no bearing on an applicant's ability to perform the job sought[.]"  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000); *Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 342 (10th Cir. 1982).  However, both objective qualifications unrelated to ability and subjective qualifications are "properly considered at the

7

second stage of the *McDonnell Douglas* analysis," when the employer must show legitimate, nondiscriminatory reasons for rejecting the plaintiff. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1194.

Evidence from the EEOC proceedings suggest that Dr. Morgan's qualifications are a key issue in his case – and an issue on which he is unlikely to prevail.[5] Dr. Morgan did not complete the fifth year of his residency in orthopedic surgery. Exhibit 2, Residency Letter by Raoul P. Rodriguez, M.D. (Feb. 28, 2008); Exhibit 3, *Jeffrey Morgan, M.D., Dep.*, 39:2–40:1, 41:10–14 (Dec. 2, 2020). He opted instead to begin a fellowship in Oregon a few months shy of finishing the program. *Morgan Dep.*, 39:2–40:1, 41:10–14. Dr. Morgan stated in his deposition that this was a "personal decision" and defended it. *Id.* at 40:2–41:9, 41:17–44:4. But he also acknowledged that "it may not be a decision that everyone supports," that it "might even have some consequences," and that few, if any, of his co-residents made similar decisions. *Id.* at 40:10–16, 44:5–17. Dr. Morgan even stated that his decision not to complete residency "became a barrier to me when I left small town America . . . It certainly meant that there were some job opportunities, [in] which I had interest . . . that I was not a candidate for." *Id.* at 65:8–20.

Becerra contends that Gallup Indian Medical Center did not hire Dr. Morgan because he did not submit a certificate showing that he completed his residency program. [Doc. 39, p. 7]. Evidence supports this position. Several witnesses affiliated with the Gallup Center and familiar with its hiring process made sworn statements during the EEOC proceedings and unanimously agreed that all physicians at the Gallup Center must complete a residency program to be hired.

---

[5] Administrative Law Judge ("ALJ") Jacob Smiles found that there were "no genuine issues of material fact in this case" and thus awarded summary judgment to Becerra, concluding the EEOC proceedings below. Exhibit 1, Order Granting the Agency's Motion for a Decision Without a Hearing, p. 4 (Aug. 26, 2021). The Court takes no position on the weight that should be given to the fact that ALJ Smiles decided the case this way. Rather, the Court's analysis of the merits is based on the undersigned's independent review of evidence produced during EEOC proceedings.

Exhibit 4, *Loretta Christensen Aff.*, p. 3 (Nov. 2, 2018); Exhibit 5, *Chelsea Kettering Aff.*, p. 4 (Nov. 12, 2018); Exhibit 6, *Kevin Gaines Aff.*, p. 5 (Nov. 12, 2018); Exhibit 7, *Helen Laughing-Hoskie Dep.*, 50:9–51:21 (Jan. 21, 2021). Chelsea Kettering, the Gallup Center's credentialing specialist, stated that she was not aware of any exceptions to this requirement and had "dealt with this issue three to four times" before. *Kettering Aff.*, p. 5. Dr. Kevin Gaines, former Chief Medical Officer of the Gallup Center, stated that some exceptions to the residency requirement had been made in a previous era but that "we have not hired a doctor without completing residency within the last 20 years." *Gaines Aff.*, p. 5. Dr. Morgan, meanwhile, stands alone in his assertion that he did not need to complete residency to be hired. *See Morgan Dep.*, 46:5–20. In sum, witness statements overwhelmingly suggest that, when Dr. Morgan applied, the Gallup Center maintained a strict residency-completion requirement for all physicians, and it is undisputed that Dr. Morgan did not complete a residency.

The qualifications issue thus poses a serious problem for Dr. Morgan's case. The evidence suggests that either Dr. Morgan cannot meet his burden to make a prima facie case of unlawful discrimination in the first phase of the *McDonnell Douglas* test, or that Becerra has a strong defense in the second phase. All witnesses involved in the hiring process agree on a single, objective, nondiscriminatory reason that Dr. Morgan was not hired, and that reason was connected to his training as a physician. And although Dr. Morgan maintains that the residency requirement was a pretext for racial discrimination, his own statements lend credence to the idea that completing residency is a common, bare minimum requirement for physicians who wish to work at hospitals. Frankly, it is difficult to see how Dr. Morgan can prevail despite all this. The weaknesses of Dr. Morgan's case thus weigh against appointment of counsel.

c. *Ability to Represent Himself*

Finally, Dr. Morgan can likely represent himself. The Court acknowledges that Dr. Morgan is having trouble prosecuting his case, and his filings show that he does not fully grasp the intricacies of litigation. For example, Dr. Morgan filed a proposed second amended complaint which purported to add new defendants and a sex discrimination claim. [Doc. 42]. He did not file an associated motion asking for leave to amend, made no cogent arguments for why leave ought to be granted, or explain what evidence justified new allegations. *See generally id.* These issues suggest appointment of counsel would help him pursue his claim.

But Dr. Morgan is not helpless. His case is relatively straightforward – the elements are clear, relevant witnesses and other sources of information have been identified, and Dr. Morgan has articulated a consistent story about what happened to him. Though presenting any legal case is difficult, a reasonably intelligent person can present such a case without counsel. Dr. Morgan is also well-educated and has a strong background in research and academia, suggesting he can gather, organize, and present information better than most. With preparation and forethought, these skills can translate well to motions practice and courtroom proceedings. Thus, on balance, the fourth *Castner* factor cuts against appointing counsel to represent Dr. Morgan.

d. *Weighing the Factors*

Exercising its sound discretion, the Court finds that counsel should not be appointed to represent Dr. Morgan. By number, the factors are equally balanced – Dr. Morgan's income and his diligent attempts to find a lawyer favor granting the Motion while the merits and his ability to represent himself disfavor it. But the *Castner* factors are not merely a quantitative analysis. They exist to ensure that district courts properly weigh two abstract competing policy interests – the fair opportunity of cases to be heard on the one hand and the frugal use of private attorney

resources on the other. *Castner*, 979 F.2d at 1421. The factors discussed above show these interests are better served by not appointing counsel. Dr. Morgan's original complaint was drafted and filed by an attorney with the benefit of the evidence gathered during EEOC proceedings. Dr. Morgan himself has proven capable of researching the law and advocating for himself since he was deemed *pro se*. Though he will struggle at times to proceed without a lawyer, the risk that he will not get a fair hearing is small. Meanwhile, an objective overview of the evidence strongly suggests that Dr. Morgan would not prevail even if counsel were appointed. Appointment would thus be a large expense to the local civil rights bar with little, if any, likelihood of repayment. On these facts, it would be unwise to appoint an attorney to this case only to slightly increase the likelihood that Dr. Morgan prevails. The Motion will thus be denied.

## IV.   LEAVE TO AMEND

On November 30, 2023, Dr. Morgan represented to the Court that he may wish to amend his complaint a second time. *See* [Doc. 54, p. 2]. The Court ordered that he be given twenty-one days from the entry of an order resolving the present Motion to move for leave to amend his complaint. [Doc. 56]. This Order resolves the Motion, so Dr. Morgan shall have until **January 23, 2024** to file a motion for leave to amend his complaint, with his proposed amended complaint attached as an exhibit. *See* D.N.M.LR-Civ. 15.1.

## V.   CONCLUSION

For the reasons discussed above, Plaintiff Jeffrey Morgan's Motion to Appointment (*sic*) Counsel, [Doc. 38], is hereby **DENIED.**

Pursuant to the Court's Order Setting Deadline for Motion for Leave to Amend, [Doc. 56], Dr. Morgan may file a motion for leave to amend his complaint on or before **January 23, 2024.**

**IT IS SO ORDERED.**

_____
Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent